556 P.2d 844

**June ,RODGERS, duly appointed Administratrix of the Estate of Joseph Wheaton, and Mrs. Joseph Wheaton, Plaintiffs-Appellants,**

**v.**

**Marvin FERGUSON, Cristobal Montoya and Steere Tank Lines, Inc., Defendants-Appellees.**

**No. 2587.**

Court of Appeals of New Mexico.

Oct. 12, 1976.

Certiorari Denied Nov. 18, 1976.

William J. Lock, Robinson, Stevens & Wainwright, Albuquerque, for plaintiffs-appellants.

Irwin S. Moise, Sutin, Thayer & Browne, P. C., Albuquerque, for defendants-appellees.

OPINION

WOOD, Chief Judge.

Under the common law, personal tort actions died with the person of either the plaintiff or defendant. Prosser, Law of Torts (4th Ed. 1971) § 126. This case involves a vestige of the common law rule not expressly covered by our statutes; specifically a cause of action based on damages accruing between a negligent injury and the subsequent unrelated death of the injured person.

The second amended complaint alleges a collision between a vehicle driven by Joseph Wheaton and a tractor trailer driven by Montoya and owned by Steere Tank Lines, Inc. Prior to filing suit, Wheaton died of causes unrelated to the accident. No claim for wrongful death is involved. Alleging that defendants were negligent, plaintiffs sought damages accruing between the time of the accident and Wheaton's death more than fifteen months later. Three categories of damages are alleged— personal injury, loss of wages and medical expenses. Montoya and Steere [1] moved for summary judgment on the basis that "plaintiffs could not recover because claims for personal injury (other than wrongful death) are extinguished by and do not survive the death of the injured party." Although the motion sought summary judgment only as to the personal injury claim, the trial court, in granting the summary judgment, dismissed the second amended complaint with prejudice. Plaintiffs appeal.

We discuss: (1) applicability of the common law rule; (2) *Ickes v. Brimhall*, 42 N.M. 412, 79 P.2d 942 (1938); (3) New Mexico survival statutes, and (4) the claims for lost wages and medical expenses.

*Applicability of the Common Law Rule*

The common law rule is ancient, having been amended by statute in 1330. *Moragne v. State Marine Lines*, 398 U.S. 375 at 385, 90 S.Ct. 1772 at 1780, 26 L.Ed.2d 339 at 348 (1970); Malone, *The Genesis of Wrongful Death*, 17 Stanford L.Rev. 1043 at 1048. The origin is obscure. "The best conjecture on the subject is that it was a result of the development of the tort remedy as an adjunct and incident to criminal punishment in the old appeal of felony and the action of trespass * * *." Prosser, supra, § 126. "[T]he non-survival rule came into being because of the criminal character of trespasses and * * * developed in connection with * * * serious intentional wrongs * * *." *Publix Cab Co. v. Colorado Nat. Bank*, 139 Colo. 205, 338 P.2d 702, 78 A.L.R.2d 198 (1959).

The rule was "entirely consonant with attitudes that were current in early English history. In order to appreciate this we need only to recall the semicriminal nature of the action of trespass, the personal character of the plea of 'not guilty,' the slow and painful emergence of the modern concept of representation of deceased persons, and the early limitations on the transmission of choses in action in general." Malone, supra, at 1051; see Winfield,

---

1. Ferguson is a named defendant but the record does not show whether he has been served or appeared as a party.

*Death as Affecting Liability in Tort*, 29 Columbia L.Rev. 239 at 242.

Over the years, various distinctions were made as to fact situations, to which the rule applied. Prosser, supra, § 126 states "no rhyme or reasons is discernible in these distinctions * * *." Malone, supra, at 1050 states that the rule "has been the continuous target of criticism by writers." Winfield, supra, at 249–250, criticized the rule insofar as it pertained to the death of the tort-feasor, but defended the rule insofar as it pertained to the victim who died. Winfield, supra, at 250 states that allowing recovery by the successors of a deceased victim would be "consonant neither with abstract justice nor with the law of torts * * *." This defense is answered by Smedley, *Wrongful Death—Bases of the Common Law Rules*, 13 Vanderbilt L.Rev. 605 at 608, 609:

> "So long as the recovery of damages was regarded as a matter of personal vengeance and punishment as between the transgressor and his victim, death erased the purpose of a civil action between them. The legal successor of the deceased party was neither the wronged nor the wrongdoer and had no personal involvement in the wrong.
>
> * * * * * *
>
> " * * * [W]hen the function of the damages awards came to be recognized as compensatory rather than punitive, the reason for the rule ceased to exist."

The foregoing discussion points out that historical application of the non-survival rule was to violent and intentional torts. It did not develop in connection with the type of tort in this case—negligence—because the tort of negligence did not evolve until approximately 1825. Prosser, supra, § 28. "Thus it is manifest that the courts could not have been mindful of the action of negligence during the centuries that this rule was evolving." *Publix Cab Co. v. Colorado Nat. Bank, supra*. Absent specific justification, the rule should not apply to torts which did not exist when the

rule developed. However, compare *Gruschus v. Curtis Publishing Company*, 342 F.2d 775 (10th Cir. 1965) which applied the rule to an action based on the right of privacy while acknowledging that the right of privacy as a tort action did not exist until the twentieth century.

The foregoing discussion also indicates that the reason for the rule ceased to exist once damage awards were recognized as compensatory. Kearny Code of Laws (1846), *Courts and Judicial Powers*, § 24 gave alcaldes jurisdiction over actions of trespass and trespasses on the case for injuries to persons not exceeding $50.00. *Romero v. Silva*, 1 N.M. (Gild.) 157 (1857) refers to a similar statute of the territorial legislature concerning justice of the peace jurisdiction. These authorities show that compensatory damages were recoverable in New Mexico prior to Laws 1875–76, ch. 2, § 2, which adopted the common law. See § 21–3–3, N.M.S.A.1953 (Repl.Vol. 4). Compensatory damages for injury to a child were sought in *Murray v. S. C., D. & P. R'y Co.*, 3 N.M. (Gild.) 580, 9 P. 369 (1886).

The common law is not the rule of practice and decision if not applicable to conditions in New Mexico. *Maestas v. Overton*, 87 N.M. 213, 531 P.2d 947 (1975); *Flores v. Flores*, 84 N.M. 601, 506 P.2d 345 (Ct.App.1973); see *Ickes v. Brimhall*, supra. The rule that a claim for personal injury does not survive the death of the victim is not applicable to conditions in New Mexico because the tort of negligence did not exist when the rule developed and because there is no reason for such a rule in connection with compensatory damages. We add that defendants do not attempt to defend the common law rule.

In this first issue, we hold there is no valid justification for the common law rule. The second issue is whether *Ickes v. Brimhall*, supra, requires this Court to apply the rule. See *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973). The third issue is whether New Mexico statutes require its application.

*Ickes v. Brimhall, supra*

In *Ickes*, plaintiff's wife was killed in an automobile accident. Plaintiff, seeking to recover damages for the wife's wrongful death, sued the administrator of the estate of the driver of the automobile. The driver had died from injuries suffered in the accident. The decision was that "the cause of action asserted against defendant as personal representative of the alleged wrongdoer did not survive the latter's death * * *."

This appeal involves a claim for personal injuries where death did not result from the injuries suffered in the accident. *Ickes* is distinguishable on its facts.

Because of this factual distinction, defendants agree that *Ickes* is not an exact precedent. Defendants' view is that the language used in *Ickes* clearly shows that the common law rule was applied. *Ickes* states:

"Under the common law no cause of action for personal injuries resulting in death survived in favor of the personal representative of the deceased nor against the personal representative of the wrongdoer."

The common law rule applied in *Ickes* pertained to injuries resulting in death. It is not the same common law rule involved in this case.

The following law review articles point out that the rule against survival of actions for injuries not resulting in death is different from the rule against survival of actions for injuries resulting in death. Winfield, supra, compare question 1 at 239 with question 2 at 241; Malone, supra, at 1044 writes about two separate rules, stating that the rule against wrongful death actions "is of more recent origin as a distinct proposition"; Smedley, supra, at 605 refers to two common law principles "overlapping in their effect and often confused in their application, but not identical".

We cannot say that the Supreme Court in *Ickes* confused the two principles or gave judicial sanction to the rule involving injuries not resulting in death. The language used in *Ickes* clearly and specifically discussed the rule involving injuries resulting in death. *Ickes* is not precedent for the common law rule involved in this case; *Ickes* does not require this Court to apply the common rule concerning injuries not resulting in death.

*New Mexico Survival Statutes*

Section 21–7–4, N.M.S.A.1953 (Repl. Vol. 4) reads:

"No action pending in any court shall abate by the death of either, or both, the parties thereto, except an action for libel, slander, malicious prosecution, assault, or assault and battery, for a nuisance, or against a justice of the peace for misconduct in office, which shall abate by the death of the defendant."

If Wheaton had filed an action for personal injuries and subsequently died, his action would have survived under § 21–7–4, supra. If an action was pending, a suit against an individual defendant would survive the defendant's death.

Section 21–7–1, N.M.S.A.1953 (Repl. Vol. 4) reads:

"In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to real or personal estate, or for any deceit or fraud, shall also survive, and the action may be brought, notwithstanding the death of the person entitled or liable to the same. The cause of action for wrongful death and the cause of action for personal injuries, shall survive the death of the party responsible therefor."

Under the last sentence of § 21–7–1, supra, a cause of action for personal injuries survives the death of the party responsible for the injuries. Neither § 21–7–1 nor § 21–7–4, supra, contains a specific provision providing for the survival of a personal injury claim when the injured person dies before filing suit. This is a hiatus in the statutory provisions and the reason for the

discussion of the common law rule in this case.

Defendants claim that in enacting § 21–7–1, supra, the Legislature intended that the common law rule of non-survival should apply. Defendants argue that the legislative intent is ascertainable from what the statute says and how the statute says it.

The second sentence of § 21–7–1, supra, provides that a claim for personal injuries survives the death of the party responsible for the injuries. This second sentence does not provide that such a claim survives the death of the injured person. Defendants assert that by the absence of such a specific provision "the Legislature placed its stamp of approval" on non-survival when the injured person dies. The second sentence was enacted by Laws 1941, ch. 79, § 1. *Cash v. Addington,* 46 N.M. 451, 131 P.2d 265 (1942) states: "It seems likely that the amendment following soon after our decision in *Ickes v. Brimhall,* 42 N.M. 412, 79 P.2d 942, was designed for the purpose of remedying the situation there existing." The situation remedied was nonsurvival when the tortfeasor dies. We cannot extract from this remedy any legislative intent in the opposite situation; the one where the injured person dies.

Defendants contend that in enacting the second sentence to § 21–7–1, supra, in 1941, and in re-enacting the statute which had been judicially construed in *Ickes v. Brimhall,* supra, the Legislature approved the judicial construction. Continuing, defendants assert that thirty-five years have elapsed since the 1941 amendment that the construction of § 21–7–1, supra, in *Ickes v. Brimhall,* supra, has stood for that length of time and this Court should not fiddle with such a long sanctioned construction. Defendants' arguments lack the necessary factual basis. As we have previously pointed out (issue 2) *Ickes v. Brimhall,* supra, involved a different factual situation and a different common law rule. We add that *Ickes v. Brimhall* holds that an injury to "personal estate", as used in § 21–7–1, supra, does not include injuries to persons. In this opinion we do not suggest otherwise.

Two additional "intent" contentions pertain to the first sentence of § 21–7–1, supra. One contention is that the Legislature approved the non-survival of all actions which did not survive at common law except those which the statute specifically states shall survive. The difficulty with this argument is that § 21–7–1, supra, neither approves nor disapproves of the common law rule of non-survival. The legislative intent that we derive from the statutory language is that the Legislature intended the specified causes of action to survive but had no intent concerning non-survival of actions under the common law rule.

The second contention relates to the concluding words in the first sentence of § 21–7–1, supra—"notwithstanding the death of the person entitled or liable to the same." The argument is that the Legislature was aware of the non-survival of an action by the death of the "person entitled" and by failing to provide for survival it intended the non-survival rule to apply. The statutory "notwithstanding" language relates to the specific causes of action declared to survive in the statute.

Section 21–7–1, supra, expresses a legislative intent that specified actions shall survive. The wording of the statute does not show a legislative intent that causes of action not specified in the statute do or do not survive. The legislative intent was that survival of causes of action not specified in the statute depends on the common law.

This opinion recognizes that a damage claim based on Wheaton's personal injuries did not survive his death at common law. We have held that there is no reason to apply such a rule in New Mexico (issue 1). *Ickes v. Brimhall,* supra, does not require application of the rule of non-survival. Nothing in § 21–7–1, supra, shows a legislative intent to preserve the common law rule which existed when § 21–7–1, supra, was enacted. We hold that

the "ancient" common law rule is inapplicable; we adopt a "new" common law rule. An action to recover damages for Wheaton's injuries between the accident and his unrelated death survived that death. In so holding, we express no opinion as to non-survival of other actions under the common law.

### Lost Wages and Medical Expenses

■ The foregoing discussion did not overlook the fact that New Mexico is a community property state. Wheaton's claim for personal injuries belonged to him and he could pursue it independent of any marital community. *Romero v. Felter*, 83 N.M. 736, 497 P.2d 738 (1972); see *Soto v. Vandeventer*, 56 N.M. 483, 245 P.2d 826, 35 A.L.R.2d 1190 (1952). Wheaton's administratrix could pursue the personal injury claim as the representative of Wheaton's estate.

■ *Soto v. Vandeventer*, supra, held that a claim for damages to the community for medical expenses and loss of earnings, if any, of the wife, belonged to the community. The opinion cites 1 de Funiak, Principles of Community Property, § 82 (1943) with approval. The same section of de Funiak is cited with approval in *Roseberry v. Starkovich*, 73 N.M. 211, 387 P.2d 321 (1963). This section of de Funiak states that the same rule applies when the husband is injured. We agree. de Funiak, supra, at 227 states:

"[I]f the injury deprives the marital community of the earnings or services of the spouse, that is an injury to the marital community; likewise there is a loss to the community where the community funds are expended for hospital and medical expenses, etc. Since the husband is usually the breadwinner, contributing definite earnings, the loss to the marital community resulting from an injury to him is more obvious  *  *  *."

The medical expenses claimed may have been incurred as a community indebtedness; the expenses may also have been incurred as a separate indebtedness of Wheaton. *McElyea v. McElyea*, 49 N.M 322, 163 P.2d 635 (1945); see § 57–4A–3(A)(4), N.M.S.A.1953 (Repl. Vol. 8, pt. 2, Supp.1975).

The second amended complaint alleged that "decedent" suffered loss of earnings and that "decedent and Plaintiffs" have become liable for certain medical expenses. Plaintiffs are the administratrix of Wheaton's estate and "Mrs. Joseph Wheaton".

Defendants support the summary judgment dismissing the wage and medical claims on the basis that the second amended complaint did not allege that Mrs. Joseph Wheaton is Wheaton's widow and did not allege that wage and medical claims are asserted on behalf of a marital community. To the extent the claims were community claims, defendants have not relied on the common law non-survival rule in defending the summary judgment dismissing these claims with prejudice.

■■ To the extent that the wage and medical claims were claims of a marital community, the common law non-survival rule would not have been applicable. Common law concepts and community property concepts are distinct; a common law rule would not be authority for dismissing a community property claim. de Funiak, supra, § 3. To the extent that the wage and medical claims were separate claims of Wheaton, our holding concerning Wheaton's personal injury claims would be applicable. To the extent these claims are asserted by Mrs. Joseph Wheaton as an individual as distinguished from a community property claim, the non-survival rule was inapplicable because she had not died. Under any of these approaches, the matter is one of pleading and not of substantive law.

Defendants are, however, entitled to know on what basis plaintiffs assert the wage and medical claims. On remand, plaintiffs shall be given opportunity to

again amend to state the basis of the wage and medical claims.

The summary judgment is reversed. The cause is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.