**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 30 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

FRANCES L. HOPKINS, personal
representative of the estate of
ROBERT E. "BOB" HOPKINS,

      Plaintiff-Appellant,

v.

OKLAHOMA PUBLIC EMPLOYEES
RETIREMENT SYSTEM, sued as
State of Oklahoma, ex rel; DON
KILPATRICK; JOSEPH CARTER;
HOWARD CONYERS; JEAN
COULTER; DONALD KEENAN;
VAL SCHOTT; W. R. STUBBS;
DAVID W. WAY; JOHN M.
CRAWFORD; CODY GRAVES;
RICHARD HAUGLAND; OSCAR B.
JACKSON, JR., and TOM DAXON, in
their official capacities as Board
Members of the Board of Trustees of
the Oklahoma Public Employees
Retirement System; STEPHEN C.
EDMONDS, Executive Director of the
Oklahoma Public Employees
Retirement System, in his official
capacity,

      Defendants-Appellees.

No. 96-6302

---

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CIV-96-0441-A)

E. Clyde Kirk, Stipe Law Firm, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Lisa Tipping Davis, Assistant Attorney General, Oklahoma City, Oklahoma (Barry K. Koonce, Assistant Attorney General, and Lydia Heimer Lee, General Counsel, Oklahoma Public Employees Retirement System, with her on the brief) for Defendants-Appellees.

Before **SEYMOUR,** Chief Judge, and **EBEL** and **BRISCOE,** Circuit Judges.

**EBEL**, Circuit Judge.

This case presents the question whether a state's forfeiture of more than two-thirds of a retired state employee's pension, as a result of the employee's conviction for bribery after the employee has begun to collect his pension, violates either the Fifth or Eighth Amendments to the United States Constitution. We hold that the forfeiture is not unconstitutional under the Double Jeopardy Clause because of the doctrine of dual sovereigns, nor is it unconstitutional under the Excessive Fines Clause because, under Oklahoma law, the employee had not acquired a vested property right in the pension.

### Background.

Robert E. "Bob" Hopkins ("Hopkins") served for twenty-two years as a

member first of the Oklahoma House of Representatives and then the Oklahoma Senate. In 1987, Hopkins left the state legislature and was sworn in as a member of the Oklahoma Corporation Commission, a statewide elected board that regulates public utilities in Oklahoma. Hopkins resigned his office on August 1, 1991, two years before his six-year term expired. Upon his retirement, the Oklahoma Public Employees Retirement System ("OPERS") credited Hopkins with thirty-two years of service, including military service and other prior service, and he began drawing a monthly pension of $4,293.18.

Three years later, on November 30, 1994, Hopkins was convicted in federal court under 18 U.S.C. § 666 of accepting a bribe in connection with his vote in 1989 on a matter then being considered by the Corporation Commission. Hopkins was sentenced to 33 months in prison, and was ordered to pay fines totaling $71,234. Following his conviction, OPERS notified Hopkins that his pension would be reduced by 70 percent, to $1,281.87 per month. This forfeiture of more than two-thirds of Hopkins' pension came as a result of Okla. Stat. tit. 51, § 24.1(A), which provides for the forfeiture of retirement benefits when a public employee is convicted of a felony or other offense involving a violation of his oath of office.[1] Hopkins estimated that this reduction resulted in an estimated

---

[1] This statute provides in part:

Any elected or appointed state or county officer or

(continued...)

loss to him and his wife, based on actuarial projections of their life expectancies, of $706,452.85.

Hopkins challenged his pension forfeiture with an administrative appeal to the OPERS Board of Trustees, but on September 21, 1995, the trustees upheld the reduction. Hopkins did not appeal the OPERS final decision in Oklahoma state court, as was his right under the Oklahoma Administrative Procedures Act, Okla. Stat. tit. 75, § 318. Instead, Hopkins filed suit in federal court challenging the constitutionality of the state's pension forfeiture statute because of its alleged violation of the Double Jeopardy and Excessive Fines Clauses of the Fifth and Eighth Amendments. Suing under 42 U.S.C. § 1983, Hopkins sought prospective equitable relief, including a declaration that the pension forfeiture statute is

---

[1](...continued)
> employee who, during the term for which he was elected or appointed, is, or has been, found guilty by a trial court of a felony in a state or federal court of competent jurisdiction . . . shall vacate such office or employment and if such felony or other offense violates his oath of office shall forfeit all benefits of said office or employment, including, but not limited to, retirement benefits provided by law; provided however, that such forfeiture of retirement benefits shall not include such officer's or employee's contributions to the retirement system or retirement benefits that are vested on the effective date of this act.

Okla. Stat. tit. 51, § 24.1(A). The state's forfeiture in Mr. Hopkins' case did not include benefits that vested before the effective date of this statute in 1981. The record does not reflect any claim by Mr. Hopkins that the state's forfeiture included money he had paid into the pension system.

unconstitutional and an injunction against its enforcement. Although Hopkins requested his attorneys fees, he did not seek any retrospective money damages.

On a motion from the state, the district court granted summary judgment to the defendants and dismissed Hopkins complaint. The court found that the pension forfeiture statute did not violate the Double Jeopardy Clause of the Fifth Amendment because the underlying bribery prosecution against Hopkins was brought by a separate sovereign. See United States v. Lanza, 260 U.S. 377, 382 (1922). The district court also found that the pension forfeiture statute did not violate the Excessive Fines Clause of the Eighth Amendment because under Oklahoma law, Hopkins had not acquired a property right in his pension benefits. Following the entry of summary judgment, Hopkins filed a motion for a new trial in which he raised new legal arguments, but the district court refused to consider these new arguments and denied his motion.

During the pendency of Hopkins' appeal before this court, Hopkins died. Although the parties did not inform the court of the appellant's death, the court learned of this fact after oral argument, and the court directed the parties to submit supplemental briefs on the question of whether Hopkins' appeal was mooted by his death. Hopkins' widow, Frances L. Hopkins, who is the personal representative of his estate, has now moved under Fed. R. App. P. 43(a) to be

substituted as the named party in this appeal.[2]

## Discussion.

### I.  Abatement or survival of Hopkins' suit.

As a preliminary matter, we must determine whether this case has been mooted by Hopkins' death.  Hopkins filed his suit alleging constitutional claims under 42 U.S.C. § 1983.  That statute's companion provision in 42 U.S.C. § 1988(a) provides that the federal courts' jurisdiction to decide a section 1983 suit will be governed by applicable state law when there is no controlling federal law on a particular point.  See 42 U.S.C. 1988(a).  In Robertson v. Wegmann, 436 U.S. 584, 588-90 (1978), the Supreme Court held that in the absence of any federal law controlling the survival and abatement of section 1983 suits, this question would be governed by the local state's survival and abatement statute, so long as that statute is "not inconsistent with the Constitution and laws of the United States."  See 42 U.S.C. § 1988(a).  This court has applied Robertson to hold that the death of a plaintiff in a First Amendment suit under section 1983 did not abate the cause of action for the plaintiff's estate.  See Grandbouche v.

_____

[2]Upon consideration of this motion, the court agrees that under Fed. R. App. P. 43(a), Frances L. Hopkins, as the personal representative of the state of Robert E. Hopkins, should be substituted as the named party in this appeal.  The caption of this appeal has been amended to reflect this decision.

Clancy, 825 F.2d 1463, 1465 (10th Cir. 1987) (applying Colorado's survival

statute); see also Anderson v. Romero, 42 F.3d 1121, 1123-25 (7th Cir. 1994)

(holding that a plaintiff's section 1983 suit alleging Eighth Amendment violations

by prison officials was not rendered moot as a result of the plaintiff's death

because Illinois law ensured the survival of such a suit).  Indeed, we have relied

on Robertson as the basis for applying Oklahoma's abatement statute,[3] the

specific statute at issue in this case, both to abate and to avoid abatement of two

federal civil rights suits.  See Pietrowski v. Town of Dibble, 134 F.3d 1006,

1008-09 (10th Cir. 1998) (holding that under Oklahoma law, the plaintiff's civil

rights claim for malicious prosecution would abate upon the death of the

defendant); Slade ex rel. Estate of Slade v. United States Postal Serv., 952 F.2d

357, 360 (10th Cir. 1991) (holding that under Oklahoma law, the plaintiff's Title

VII claim would not abate upon his death).

Because Hopkins' suit alleging double jeopardy and excessive fines

---

[3]The Oklahoma abatement statute states:

> No action pending in any court shall abate by the
> death of either or both the parties thereto, except an
> action for libel, slander or malicious prosecution, which
> shall abate by the death of the defendant.  An action for
> libel, slander or malicious prosecution shall not abate
> after a jury verdict or a decision by the court where the
> trial is by the court, unless a new trial is ordered.

Okla. Stat. tit. 12, § 1052.

violations does not constitute a claim for slander, libel or malicious prosecution, Oklahoma law calls for the survival of his suit despite his death. See Okla. Stat. tit. 12, § 1052. Thus, we conclude that Hopkins' suit does not abate upon his death. Because a live case or controversy continues to exist between Hopkins' estate and the defendants, this case is not moot.[4] See Phelps v. Hamilton, 122 F.3d 1309, 1326 (10th Cir. 1997) ("The central question in determining whether a case has become moot is whether 'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'") (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)); see also Erwin Chemerinsky, Federal Jurisdiction, § 2.5.1, at 125 (2d ed. 1994) (noting that a civil case is not moot under Article III even though the plaintiff has died as long as the plaintiff's cause of action survives his death).

---

[4]We note that Mrs. Hopkins' presence in this case results solely from her role as the personal representative of Mr. Hopkins' estate. Hopkins' suit never named his wife as a party, nor did Mrs. Hopkins ever seek relief for her own property interest in her husband's pension. See Okla. Stat. tit. 74, § 913.4(F) (establishing that the surviving spouse of a state pension beneficiary is entitled to 50 percent of the pensioner's benefit). Thus, even though Mrs. Hopkins might have had standing to assert her own claim in her husband's suit, at this stage in the litigation, Mrs. Hopkins is only nominally a party in this case. Any relief that might have resulted from this suit would have flowed to Mr. Hopkins' estate, not to Mrs. Hopkins personally.

## II. Exhaustion of Hopkins' claims.

A second jurisdictional issue in this case is the state's claim that Oklahoma's state-law exhaustion requirements for challenges against decisions by state administrative agencies creates a bar to our federal jurisdiction over Hopkins' federal constitutional claims. The state relies on Oklahoma case law that appears to require all challenges against state administrative action to be pursued through the judicial review provisions of the Oklahoma Administrative Procedures Act, Okla. Stat. tit. 75, § 318. See Martin v. Harrah Indep. Sch. Dist., 543 P.2d 1370, 1372 (Okla. 1976). But see id. at 1375-76 (noting that exhaustion is not required for suits under 42 U.S.C. § 1983 because "[r]elief under the Civil Rights Act provides a supplemental remedy to any state remedy and relief under the act may not be defeated because of failure to exhaust administrative remedies provided under state law").

The state's argument is unavailing because it is more than well-settled that a plaintiff under 42 U.S.C. § 1983 need not exhaust his administrative remedies before filing suit in federal court. See Patsy v. Board of Regents, 457 U.S. 496, 516 (1982); Brown v. Hartshorne Pub. Sch. Dist. No. 1, 864 F.2d 680, 683 (10th Cir. 1988) (reinstating a section 1983 suit that had been dismissed for failure to exhaust administrative exhaustion). Furthermore, we note that Oklahoma's administrative exhaustion doctrine applies only when a litigant seeks "review of

agency decisions." See Johnson v. Board of Governors of Registered Dentists, 913 P.2d 1339, 1343 (Okla. 1996). Hopkins' suit here, however, is not properly characterized as a review of an agency decision. Hopkins has not contested the correctness, in light of Oklahoma's pension forfeiture statute, of the reduction in his pension benefits. Instead, Hopkins is challenging the constitutionality of the pension forfeiture statute itself. This challenge does not involve a review of the arbitrariness or capriciousness of OPERS's administrative decision under the Oklahoma Administrative Procedures Act, Okla. Stat. tit. 75, § 322(1). Thus, regardless of Oklahoma's provisions for administrative review, we have jurisdiction over this federal civil rights suit.

### III. Hopkins' constitutional claims.

Turning to the merits of Hopkins' case, we note that in light of the lack of any dispute over the facts in this case we exercise de novo review of the district court's determination of the constitutional issues here. See Villanueva v. Carere, 85 F.3d 481, 487 (10th Cir. 1996). Of course, as this case challenges the constitutionality of a state statute, we are constrained by the "venerable presumption" that an act of a state legislature is generally taken to be constitutional, and the burden is on the plaintiff to demonstrate how the statute transgresses the requirements of the United States Constitution. See id.

## A. Double jeopardy.

The first challenge Hopkins raises against Oklahoma's reduction of his pension benefits involves his claim that Oklahoma's pension forfeiture statute violates the Double Jeopardy Clause of the Fifth Amendment. Under the Fifth Amendment, no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. For more than a century, the Double Jeopardy Clause has been interpreted as inapplicable in those situations where two separate sovereigns prosecute the same offence. See Moore v. Illinois, 55 U.S. (14 How.) 13, 19 (1852). "[A]n act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each." United States v. Lanza, 260 U.S. 377, 382 (1922) (upholding a federal prosecution under federal Prohibition laws after an earlier conviction for the same conduct under state law).

Under this dual-sovereigns doctrine, the crucial question is whether the two proceedings against a litigant can be characterized as emanating from "distinct sources of power." See Heath v. Alabama, 474 U.S. 82, 88 (1985). The Supreme Court has been unwavering in its conclusion that when the two "sources of power" at issue in a double jeopardy claim are the federal government and a state government, then the dual-sovereigns doctrine applies and there is no double jeopardy in the second prosecution. See United States v. Wheeler, 435 U.S. 313,

- 11 -

316-17 & n.7 (1978).  As the Court explained, "a federal prosecution does not bar

a subsequent state prosecution of the same person for the same acts, and a state

prosecution does not bar a federal one."  Id. at 317 n.7.

In Hopkins' case, his first prosecution was in federal court for violation of

the federal bribery law under 18 U.S.C. § 666.  The second proceeding against

Hopkins was before the Oklahoma pension board under Oklahoma's pension

forfeiture statute, Okla. Stat. tit 51, § 24.1(A).  It is beyond doubt, therefore, that

the "authority to punish" Hopkins in these two proceedings emanated from two

"distinct sources of power."  See Heath, 474 U.S. at 88.  As result, Oklahoma's

reduction in Hopkins' pension benefits does not violate the Double Jeopardy

Clause.

Despite this conclusion, Hopkins argues that the dual-sovereigns doctrine

does not apply in his case because of the "sham prosecution" exception under

Bartkus v. Illinois, 359 U.S. 121 (1959).[5]  In Bartkus, the Court held that an

_____

[5]Hopkins did not raise this argument based on Bartkus until after the
district court ruled on the defendants' summary judgment motion.  Normally, we
would not consider a newly raised argument on appeal when it was not properly
raised below.  See Walker v. Mather, 959 F.2d 894, 896 (10th Cir. 1992).
However, we will consider Hopkins' arguments on the "sham prosecution"
exception to the dual-sovereigns doctrine because Hopkins appears not to have
had an opportunity to address the state's argument on this issue before the district
court rendered its decision.
    The state's motion for summary raised only two grounds for dismissing
Hopkins' suit: the failure to exhaust state-law remedies and the contention that
(continued...)

Illinois prosecution of the defendant under a state robbery statute was not barred by the Double Jeopardy Clause in light of the defendant's earlier acquittal in federal court on a federal bank robbery charge based on the same course of conduct. Id. at 121-22, 139. In the course of explaining this decision, the Court rejected arguments that the Illinois prosecution was "merely a tool" by federal prosecutors to overcome the defeat they had suffered in the federal prosecution. See id. at 123. The court said the evidence failed to sustain any conclusion that "the state prosecution was a sham and a cover for a federal prosecution." Id. at 124.

The Tenth Circuit has interpreted this discussion of a "sham" prosecution in Bartkus as suggesting a possible exception to the dual-sovereigns doctrine under the Double Jeopardy Clause. See United States v. Raymer, 941 F.2d 1031, 1037 (10th Cir. 1991) (citing United States v. Bernhardt, 831 F.2d 181 (9th Cir. 1987)); see also United States v. Guzman, 85 F.3d 823, 826-27 (1st Cir. 1996) (noting that the Bartkus suggestion of a "sham prosecution" exception has been adopted in the D.C., First, Second, Fourth, Sixth, Ninth, and Tenth Circuits). But see

---

[5](...continued)
Oklahoma's pension forfeiture statute did not impose a "punishment" under the Double Jeopardy Clause. Only after Hopkins' filed his opposition to the state's motion for summary judgment did the state raise the new argument that there was no double jeopardy in this case because of the dual-sovereigns doctrine. In light of this posture, we believe it is appropriate to consider Hopkins' argument that the dual-sovereigns doctrine is inapplicable.

United States v. Brocksmith, 991 F.2d 1363, 1366 (7th Cir. 1993) (questioning whether Bartkus actually recognized an exception to the dual-sovereigns doctrine). In Raymer, this court held that the defendant had failed to present sufficient evidence to show that a federal drug prosecution against the defendant was a "sham" or "cover" for an aborted state prosecution. See Raymer, 991 F.2d at 1039. Under Raymer, a defendant must meet a very high evidentiary burden to establish the "sham prosecution" exception -- the defendant must show that "one sovereign is so dominated by the actions of the other that the former is not acting of its own volition." Id. at 1037.

Hopkins argues that the "sham prosecution" exception applies in his case because Oklahoma could not have prosecuted him for bribery under state law in light of the state statute of limitations and because Oklahoma's pension forfeiture statute merely piggy-backs on top of a federal prosecution. These arguments, however, do not come close to meeting the "substantial burden" on Hopkins to show that Oklahoma's attempt to forfeit his pension was "so dominated" by the actions of federal prosecutors that Oklahoma officials were not acting of their own volition. See Raymer, 991 F.2d at 1037. Indeed, the only evidence in the record indicating contact between federal prosecutors and Oklahoma pension officials is a letter from the United States Attorney for the Northern District of Texas notifying OPERS that Hopkins had been convicted in federal court. As a

result, we conclude that there is insufficient evidence to sustain a claim of "sham prosecution" in Hopkins' case. Thus, the dual-sovereigns doctrine applies here, and Oklahoma's forfeiture of Hopkins' pension is not barred by the Double Jeopardy Clause.[6]

## B. Excessive fines.

The second argument Hopkins raises against the forfeiture of his pension benefits is his claim that Oklahoma's pension forfeiture statute imposes an excessive fine on him in violation of the Eighth Amendment. This amendment reads, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Supreme Court has explained that the Excessive Fines Clause "was intended to limit only those fines directly imposed by, and payable to, the government." Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 268 (1989). Furthermore, at the time of the drafting and ratification of the Eighth Amendment, the understanding of the term "fine" included "a payment to a sovereign as punishment for some offense." Id. at 265. Implicit in this interpretation of the Excessive Fines Clause is the notion that it applies only when the payment to the government involves turning over "property" of some kind that once belonged to

---

[6]As a result of our conclusion that the dual-sovereigns doctrine applies in Hopkins' case, we do not reach Hopkins' other argument that forfeiture of his pension is a "punishment" subject to the Double Jeopardy Clause.

- 15 -

the defendant. Cf. Austin v. United States, 509 U.S. 602, 604 (1993) (applying the Excessive Fines Clause to in rem forfeitures of a drug defendant's mobile home and business).

In this case, therefore, we must decide the threshold question of whether the forfeiture of Hopkins' pension amounted to a payment of "property" by him to the state of Oklahoma. The district court ruled that under Oklahoma law, Hopkins had no "property" right in his pension benefits -- even though he had already begun to receive the pension benefits -- because Hopkins' right to his pension always was contingent on maintaining honorable service during his tenure in office. See Woods v. City of Lawton, 845 P.2d 880, 882-83 (Okla. 1992); see also Okla. Stat. tit. 51, § 24.1(A) (forfeiting a public employee's pension benefit upon the employee's felony conviction for "a felony or any offense involving a violation of his official oath"). When Hopkins accepted a bribe in connection with a matter then being considered by the Corporation Commission, he breached his duty of honorable service. See Okla. Const. art. 9, § 17 (specifying that the oath of office for each commissioner must include a declaration that the commission has no financial interest in any matters that come before the Commission). As a result, under Oklahoma law, Hopkins had no "vested right" in his pension benefits. See Baker v. Oklahoma Firefighters Pension & Retirement Sys., 718 P.2d 348, 350-51 (Okla. 1986) ("[U]nder Oklahoma law, the right to a

pension would vest, or become absolute, upon the pension recipient's becoming eligible for payment of the pension. . . . [T]he right of a claimant to a pension is controlled by the terms of the statute in effect when the right to a pension vests and . . . vesting occurs as of the date of retirement."); see also Board of Trustees of the Police Pension & Retirement Sys. v. Weed, 719 P.2d 1276, 1278 (Okla. 1986) (noting the legal significance of a pension forfeiture statute that is tied to dishonorable conduct during the employee's term in office) (citing Kerner v. State Employee's Retirement Sys., 382 N.E.2d 243, 245-46 (Ill. 1978)).

We agree with the district court's interpretation of Oklahoma law, and thus, we concur that Hopkins had no property right in his pension benefits. As a result, the forfeiture of those benefits does not constitute a "payment" to the state of Oklahoma, and this forfeiture does not violate the Excessive Fines Clause of the Eighth Amendment.

On appeal, Hopkins now contends that under Oklahoma law he did indeed have a "vested right" to at least that portion of his pension benefit that derives from his service as a state legislator. Hopkins argues that under Oklahoma law his pension benefits accruing as a result of his legislative service vested when he completed his terms of office in the state House and the state Senate. He contends that his bribery conviction, relating as it does to his position as a Corporation Commissioner, affects only the pension benefits he accrued while

serving on the Commission.

We decline to consider this argument because Hopkins failed to raise it below before the district court rendered its summary judgment. Hopkins presented his separate-vesting argument for the first time in his motion for a new trial. However, unlike the dual-sovereigns issue discussed above, Hopkins was fully on notice at the summary judgment stage that the question of whether his pension rights had "vested" would be the crucial issue under his Eighth Amendment claim. The state's brief in support of summary judgment discussed two state cases that had explicitly rejected arguments about indefeasible vesting of pension benefits. See Kerner v. State Employees' Retirement Sys., 382 N.E.2d 243, 246 (Ill. 1978); West Virginia Pub. Employees Retirement Sys. v. Dodd, 396 S.E.2d 725, 732-33 (W.Va. 1990), overruled on other grounds by Booth v. Sims, 456 S.E.2d 167 (W.Va. 1995). Thus, Hopkins could have, and should have, presented his argument concerning pension vesting at that time. As the district court noted in dismissing his motion for a new trial, a litigant may not treat summary judgment proceedings as a "mere warmup" for the "main event." See Settino v. City of Chicago, 642 F. Supp. 755, 759 (N.D. Ill. 1986). We see no abuse of discretion in the district court's refusal to consider Hopkins' untimely attempt to raise this new argument in his motion for a new trial. Furthermore, Hopkins' failure properly to present his argument to the district court prevents us

from considering the issue now.  See Tele-Communications, Inc. v. Commissioner of Internal Revenue, 104, F.3d 1229, 1233 (10th Cir. 1997) ("Propounding new arguments on appeal in an attempt to prompt us to reverse the trial court undermines important judicial values.")

**Conclusion**

As a result, we hold that Oklahoma's forfeiture of Hopkins' pension benefits under Okla. Stat. tit. 51, § 24.1(A), did not violate either the Double Jeopardy Clause of the Fifth Amendment or the Excessive Fines Clause of the Eighth Amendment.  Thus, we AFFIRM the judgment of the district court.