**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 14 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

ED MEDINA; LUPE MEDINA, individually
and on behalf of the estate of Joe Cisneros, and
as guardians and next friends of Faith Cisneros
and Roman Cisneros, minors; JOE CISNEROS,
est; FAITH CISNEROS; ROMAN CISNEROS,

    Plaintiffs-Appellants,

v.

DANNY PACHECO, individually and in his
official capacity; FRANK GALLEGOS,
individually and in his official capacity; THE
VILLAGE OF QUESTA,

    Defendants-Appellees,

and

DENNIS RUIZ, in his individual capacity;
JAMES LUCERO, in his individual capacity;
LAWRENCE GALLEGOS, individually and in
his official capacity,

    Defendants.

No. 97-2013
(D. N.M.)
(D.Ct. No. CIV-95-1004-JC)

_____

**ORDER AND JUDGMENT**[*]

---

   [*] This order and judgment is not binding precedent except under the doctrines of
law of the case, _res judicata_ and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Before **TACHA, BRORBY,** and **BRISCOE**, Circuit Judges.

_____

Ed and Lupe Medina appeal several of the district court's rulings concerning their 42 U.S.C. § 1983 claims against a number of state officials. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

On September 11, 1993, Joe Cisneros took his two children to visit the home of their maternal grandparents, James and Delores Martinez. During that visit, Mr. Cisneros got into an argument with the children's mother (who was living in a trailer behind her parents' house). As a result of the argument, Mr. Cisneros decided to leave with his children. After he left, he brought the children back to the home of his great uncle and aunt, Ed and Lupe Medina, where he and the children were living at the time.

The children's maternal grandmother, Mrs. Martinez, did not want Mr. Cisneros to take them from her home, so she called the local police. After speaking to Mr. and Mrs. Martinez, the Chief of Police, defendant Danny Pacheco, and another officer, defendant Frank Gallegos, went to the Medina home to resolve the dispute. Upon arrival, the officers told the Medinas and Mr. Cisneros that they would be taking the children. The Medinas protested, so the

officers called an official, defendant Dennis Ruiz, at the Taos County Social Services office of the Children, Youth, and Families Department. Mr. Ruiz spoke with Mr. Medina, and as a result of that phone call, Mr. Medina apparently agreed to turn over the children to the officers. The officers took the children to the home of their maternal grandparents, the Martinezes. Two days later, the Medinas successfully sued for return of the children, and they were reunited three days after the officers removed the children from the Medinas' home.

The Medinas filed a complaint in federal district court, on behalf of themselves, the children, and the estate of Mr. Cisneros (who died in an unrelated accident before complaint was filed). Their complaint asserted numerous claims based on 42 U.S.C. § 1983 and New Mexico state law. The lawsuit named as defendants the two police officers, two Children, Youth, and Families Department officials, the Village of Questa, which employed the police officers, and the Mayor of the Village of Questa.[1] Prior to trial, the district court dismissed the claims filed on behalf of Mr. Cisneros' estate, finding they did not survive his death. The court also dismissed all claims against the mayor, the claims against

---

[1] For various reasons, the only defendants involved in this appeal are Officer Pacheco, Officer Gallegos, and the Village of Questa. The court will refer to these three collectively as "the defendants."

one of the Children, Youth, and Families Department officials, and various state law claims. The parties then proceeded to trial on the remaining claims. The jury returned a verdict in favor of the defendants on all claims. The Medinas appeal several of the district court's decisions leading up to, and during, the trial.

The Medinas raise five issues:[2] (1) whether the district court gave an improper jury instruction on "interference with intimate familial relationship;" (2) whether the district court erred in refusing to give a proposed jury instruction on consent; (3) whether the district court erred by allowing a defense expert to testify too broadly concerning the Medinas' alleged injuries; (4) whether the district court erred in ruling Mr. Cisneros' claims did not survive his death; and (5) whether the district court erred in excluding evidence concerning possible prior misconduct by two of the defendants.

### Inadequate record on appeal

We must address a preliminary matter before dealing with any of the specific issues on the merits. Defendants argue the Medinas have failed to

---

[2] In their brief, the Medinas raised a sixth issue: the district court erred in failing to direct a verdict in their favor on the claim of interference with intimate familial relationship. This issue was abandoned during oral argument.

-4-

preserve all but two of the issues they raise because they supplied an incomplete record.[3] *See King v. Unocal Corp.*, 58 F.3d 586 (10th Cir. 1995). In large part, we agree.

"It is the appellant's responsibility to provide us with a proper record on appeal."[4] *King*, 58 F.3d at 587 (citing Fed. R. App. P. 10(b)(2); *Yarrington v. Davies*, 992 F.2d 1077, 1080 (10th Cir. 1993)). Counsel must "'see that the record excerpts are sufficient for consideration and determination of the issues on appeal and the court is under no obligation to remedy any failure of counsel to fulfill that responsibility.'" *Id.* (quoting *Deines v. Vermeer Mfg. Co.*, 969 F.2d

---

[3] There is no question this court can consider the legal issue whether Mr. Cisneros' claims survive his death. Thus, we will address appellant's fourth issue on the merits.

During oral argument, counsel for the defendants suggested review of all the other issues was precluded for lack of an adequate record. In the defendants' brief, however, there is no suggestion that this court cannot reach the question of whether the jury instruction on intimate familial relationships misstated the law. We believe an adequate record exists to decide this, appellants' first issue, as well.

[4] Counsel for the Medinas claims he submitted a partial transcript in an effort to comply with the court's Rule 10.1, which cautions parties not to order unnecessary transcripts. That rule states, however, "[i]t is the appellant's responsibility to order and provide *all portions* of the transcript necessary to give the court of appeals a complete and accurate record of the proceedings insofar as such proceedings relate to the issues raised on appeal." 10th Cir. R. 10.1.1 (emphasis added). Counsel should not interpret "complete and accurate" to mean only that testimony or evidence that supports appellants' position.

977, 979 (10th Cir. 1992)).

With respect to their second issue – whether the district court erred in refusing to give a proposed jury instruction on consent – the Medinas state, without citing to any relevant portions of the record: "During the course of the trial, defendants relied heavily on the assertion that when the defendant officers wanted to take Faith and Roman Cisneros into custody, ... the Medinas gave the children up voluntarily." Unfortunately, they do not provide a transcript of the defendants' side of the trial. Counsel justifies this by saying it is clear that the issue was contested from opening statements and the testimony of one witness. The question is not only whether the issue was contested. When deciding whether a court improperly instructed a jury, "'we consider all the jury heard, and from the standpoint of the jury, decide ... whether it had [an] understanding of the issues and its duty to determine these issues.'" *King*, 58 F.3d at 587 (quoting *Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1365 (10th Cir. 1994)). Without all the relevant portions of the record, we simply cannot determine whether the court properly denied the challenged instruction. *See id.* at 587-88 (citing *Shamrock Drilling Fluids, Inc. v. Miller*, 32 F.3d 455, 460 (10th Cir. 1994)). For that reason, we will not address this issue on the merits.

With respect to their third issue – whether the district court erred by allowing a defense expert to testify too broadly – the Medinas argue the expert's testimony went far beyond what was required to make the defendants' case on damages. The defendants argue the expert's testimony was necessary to rebut evidence presented by the Medinas. The Medinas did not provide us a record of any evidence pertaining to damages other than the expert's testimony they now challenge (*e.g.,* the testimony of the Medinas concerning their injuries). Counsel for the Medinas argues nothing more is needed because the point they raise on appeal is that the expert should have been limited to discussing damages. Again, evidentiary decisions rarely are made in a vacuum. There simply is no way for this court to determine whether the district court abused its discretion in allowing the full breadth of the expert's testimony without reviewing all the previously admitted evidence relevant to the Medina's damages claim. Accordingly, we will not address the merits of this issue.

Finally, the defendants challenge the sufficiency of the record with respect to the Medinas' fifth issue – whether the district court erred in excluding evidence concerning possible prior misconduct by two of the defendants. We have

sufficient material to resolve this issue.[5]  Consequently, we will address it on the merits.

***Jury Instruction on Interference with Intimate Familial Relations***

With respect to the claim of interference with intimate familial relations, the district court instructed the jury it must find, among other things, "that the conduct of the government constituted an undue burden on the Plaintiffs' right to intimate familial relations."  The Medinas argue this instruction was incorrect as a matter of law.

"'[W]e review de novo the question of whether the court's instructions, considered as a whole, properly state the applicable law and focus the jury on the relevant inquiry.'"  *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1509 (10th Cir. 1997) (quoting *York v. American Tel. & Tel. Co.*, 95 F.3d 948, 953 (10th Cir. 1996), *cert. denied*, 118 S. Ct. 626 (1997).  "No particular form of words is essential if the instruction as a whole conveys the correct statement of the

---

[5]  Although not for the reason offered by counsel.  Counsel for the Medinas argues the record is sufficient on this issue because the record contains the opening statements and the pre-trial pleadings.  Counsel should know such statements and pleadings are not evidence.  The district court based its ruling on the evidence produced at trial.  Likewise, our review of that decision must be based on the evidence produced at trial.

-8-

applicable law." *Considine*, 43 F.3d at 1365 (alteration in original) (quotation omitted). We reverse for a faulty jury instruction when "we have substantial doubt whether the instructions, considered as a whole, properly guided the jury in its deliberations," *Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1454 (10th Cir. 1997), but only if the error was prejudicial, *Dikeman v. National Educators, Inc.*, 81 F.3d 949, 955 (10th Cir. 1996).

The language used in the instruction comes from this court's decision in *Griffin v. Strong*, 983 F.2d 1544 (10th Cir. 1993). In *Griffin*, we determined that in order to decide if a plaintiff's familial association rights have been violated, we apply a balancing test weighing the state's interests in protecting children against the family member's interests in his or her familial right of association. *Id.* at 1547. Examining the parties' interest in light of the facts of the case, we weigh those interests to determine whether the state official's conduct constitutes an "undue burden" on the family member's rights. *Id.*

The district court used the "undue burden" standard in the jury instruction, but it did not provide any discussion or explanation of the competing interests to be balanced by the jury. The Medinas argue the term "undue burden" inadequately captures the required balancing test. They contend an instruction

that explicitly "balance[d] the interests of the Plaintiffs' right to be free from interference with intimate familial relations against the state's interest in protecting powerless children to be free from abuse and neglect" would have done a better job of forcing the jury to focus on the State's interest in this case (or lack thereof), as well the burden it imposed.[6] They suggest the "undue burden" test eliminates any sense of balancing – that it led the jury to focus on whether the officers' actions were intrusive without also considering the Medinas' equally important protected family interest. Without an explicit reference to the counterbalancing interest, they argue, the instruction failed to give the jury any frame of reference for determining exactly what might be "undue."

We agree with the Medinas that the instruction provided by the district court was incomplete.[7] However, on review, our role is not to determine what

---

[6] A large part of the Medinas' discussion regarding this issue boils down to an implicit argument they are entitled to a directed verdict based on insufficiency of the evidence because the state officials did not believe the children were abused, neglected, abandoned, or in danger. As noted earlier, during oral argument counsel conceded the Medinas are not entitled to a directed verdict. We will assume that concession also applies to their related discussion on this issue.

[7] For example, the court should have used something along these lines:

The right to family integrity or association protects family relationships. The interest in protecting the family is counterbalanced by two competing interests, the interest of a child within the family to be free from abuse, and the government's interest in protecting powerless children who may be

-10-

instruction we would have given, it is to decide whether the instruction may have misled the jury. On this point we must disagree with the Medinas. The word "undue" connotes the balancing test required because it only has meaning in the context of weighing one thing against another. One cannot determine if some action was due or undue without considering the circumstances. Clearly, the officers' actions imposed a "burden" on the Medinas' associational rights. The jury instruction focused the jurors' attention on that burden and required them to decide if it was excessive in light of the facts. Because the competing interests at stake were fairly obvious – the instruction establishes the Medinas had a right to intimate familial association entitled to constitutional protection – and the word "undue" requires a balancing analysis, we do not have substantial doubt whether this instruction led the jury to conduct the required balancing test. For this reason, we affirm the district court's ruling.

------

subject to abuse. [You must weigh these interests to determine whether the officers' conduct in this case constituted an undue burden on the Medinas' associational rights.]

*Griffin*, 983 F.2d at 1549 n.6.

***Joe Cisneros' Claims***

Following the incident in question, but before the filing of the complaint in this case, the father of the children, Mr. Cisneros, died. Mr. Medina, acting as Administrator of Mr. Cisneros' estate, asserted the rights of Mr. Cisneros in the complaint.

Prior to trial, the district court dismissed the claims brought on behalf of Mr. Cisneros' estate, finding they did not survive his death. The court analogized Mr. Cisneros' claims to intentional torts, which it determined do not survive the death of the victim in New Mexico. The Medinas challenge that decision. "We review *de novo* a district court's dismissal of a cause of action for failure to state a claim upon which relief can be granted." *Chemical Weapons Working Group, Inc. v. United States Dep't of the Army*, 111 F.3d 1485, 1490 (10th Cir. 1997).

Survival of § 1983 actions after a plaintiff's death is governed by state law, as long as the state law is "not inconsistent with the Constitution and laws of the United States." *Robertson v. Wegmann*, 436 U.S. 584, 588-90 (1978); *Hopkins v. Oklahoma Public Employees Retirement System*, ___ F.3d ___, ___, 1998 WL 348407, *2 (10th Cir. Jun. 30, 1998); 42 U.S.C. § 1988(a). Therefore, we must look first to New Mexico state law to determine if Mr. Cisneros' claims survive.

The New Mexico survival statute states, in part:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to real or personal estate, or for any deceit or fraud, shall also survive, and the action may be brought, notwithstanding the death of the person entitled or liable to the same.

N.M. Stat. Ann. § 37-2-1.[8]  Because Mr. Cisneros' § 1983 claims are not in the nature of any of the listed actions, we must look to common law to see if they survive.

First, however, we must determine how to classify the claims.  The Supreme Court has determined § 1983 claims are analogous to tort, or personal injury, actions.  *See Wilson v. Garcia*, 471 U.S. 261, 277 (1985).  The district court considered the claims intentional torts for purposes of determining survivability.[9]  We agree with this analogy.  The actions underlying a § 1983

---

[8] Counsel for the Medinas bases his argument on the final sentence of this statute (not quoted above).  He misreads the sentence.  The sentence applies to the death of the tortfeasor, not the victim, and, as such, is inapplicable.

[9] The Medinas urge this court to consider Mr. Cisneros' claims as personal injury actions, in light of the Supreme Court's decision in *Wilson*, 471 U.S. at 280. Unfortunately, *Wilson* is of limited use for our purposes.  In *Wilson*, the Supreme Court had to classify § 1983 claims for statute of limitation purposes.  *Id.* at 262.  The court determined the claims best fit the category of personal injury actions.  *Id.* at 276.  The court then looked to the various statute of limitations provisions in New Mexico law and applied the limitations period "for an injury to the person or reputation of any person." *Id.* at 280 (quoting N.M. Stat. Ann. § 37-1-8).

claim do not have to be intentional (*e.g.*, driving a police car in a chase with reckless indifference and injuring a bystander or recklessly seizing the wrong person pursuant to a warrant). Section 1983 claims based on unintentional actions would be most closely analogous to negligence-based torts for survivability purposes. The actions alleged to be in violation of § 1983 in this case, however, were intentional: the removal and transportation of the children. Therefore, the

---

The universe of personal injury actions includes negligence-based torts and intentional torts. *See Maestas v. Overton*, 526 P.2d 203, 204 (N.M. Ct. App. 1974) ("New Mexico recognizes interspousal immunity for nonintentional personal injury actions."), *rev'd on other grounds*, 531 P.2d 947 (N.M. 1975); *Owens v. Okure*, 488 U.S. 235, 236 (1989) (considering question arising "where a State has one or more statutes of limitations for certain enumerated intentional torts, and a residual statute for all other personal injury actions"). The Supreme Court did not have occasion in *Wilson* to consider whether § 1983 claims were more closely analogous to the intent- or negligence-based subcategories of personal injury actions because that distinction did not make a difference to the result – the statute of limitations provisions in New Mexico law do not provide for different limitations periods for intentional- and negligence-based personal injury actions. See N.M. St. Ann. §§ 37-1-1 to 37-1-30.

The Supreme Court was faced with this question in *Owens*, a case not raised by the Medinas. *Owens*, 488 U.S. at 236. In *Owens*, the Court determined that § 1983 claims should not be treated as intentional torts for statute of limitations purposes. *Id.* at 249-50. However, in reaching this decision the Court expressed the importance of establishing a simple standard in light of the "multiplicity of state intentional tort statutes of limitations" and the "wide spectrum of claims which § 1983 has come to span." *Id.* at 248-50. A similar concern does not exist in the survivability context because there is no comparable multiplicity of options. In this case, we are faced only with the question of whether the claim should fall into one of two categories – negligence-based torts that are exempt from the nonsurvival rule or intentional-based torts that are subject to the nonsurvival rule – and we are presented with a claim (improper seizure) that is clearly analogous to common-law intentional torts. For these reasons, we do not believe the *Owens* statute of limitations analysis controls our analysis here.

-14-

closest analogy would be to intent-based torts.

At common law, torts did not survive the death of the victim.  *See Rodgers v. Ferguson*, 556 P.2d 844, 846-48 (N.M. Ct. App. 1976).  The New Mexico Court of Appeals, however, has decided that a damage claim based on personal injuries due to negligence should survive the victim's death.  *Id.* at 849-50.  We must decide, then, if the New Mexico courts would place the claims in this case into the general category that do not survive under the common law, or into the category already carved out by the courts that do survive.[10]

The district court distinguished Mr. Cisneros' § 1983 claims from those carved out in *Rodgers* based on their intentional nature.  The court correctly noted the foundation of the underlying claim in negligence was a decisive aspect of the *Rodgers* decision.  *Rodgers*, 556 P.2d at 846-48 (distinguishing cases involving "serious intentional wrongs").  Indeed, the court in *Rodgers* stated:  "The rule that a claim for personal injury does not survive the death of the victim is not applicable to conditions in New Mexico because the tort of negligence did not

---

[10]  The district court noted the question of whether an intentional tort survives the unrelated death of a plaintiff is one of first impression in New Mexico.  As such, the district court, and this court, must attempt to resolve the issue as the New Mexico Supreme Court would.  *See Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988).

exist when the rule developed." *Id.* at 848.  Given the emphasis the state court

placed on the element of negligence in deciding *Rodgers*, we agree with the

district court that the New Mexico Supreme Court probably would decide this

case differently.[11]

The Medinas argue, if this court finds the claims would not survive under

New Mexico law, as we now have, the court should not apply state law because it

would fail to effectuate the goals of § 1983.  They argue the operation of New

Mexico survival law deprives Mr. Cisneros' estate of a proper claim, and deprives

§ 1983 of its full deterrent effect.  Obviously, § 1983 claims can fail to survive or

we would not bother looking to state law.[12]  *See Pietrowski v. Town of Dibble*,

---

[11]  In *Padilla v. Estate of Griego*, 830 P.2d 1348 (N.M. Ct. App. 1992), the New Mexico Court of Appeals decided, under a different procedural footing, not to distinguish between the survivability of torts based in negligence and those based in intent. However, that case was based on statutory interpretation of the last sentence of § 37-2-1 (dealing with death of tortfeasor, not victim), not common law principles.  *Id.* at 1352 ("We see no reason why the legislature would wish to permit a claim for injuries caused by negligence to survive the death of the tortfeasor while not permitting survival of a claim for compensatory damages arising from an [intentional tort].").  This distinction causes us to doubt whether the logic would extend to the situation in this case.  Because this case is based on a reading of New Mexico common law, we think the language in *Rodgers* providing for survival of negligence-based claims controlling.

[12]  The Supreme Court has already rejected the types of arguments made by the Medinas:

That a federal remedy should be available, however, does not mean that a § 1983 plaintiff (or his representative) must be allowed to continue an

134 F.3d 1006, 1008-09 (10th Cir. 1998) (holding § 1983 malicious prosecution claim abates after death of defendant, giving deference to state statute).  In addition, this ruling should have no effect on the deterrent value of § 1983, because Mr. Cisneros' death was unrelated to the actions of the defendants.  It is hard to believe state officials will violate the constitutional rights of New Mexico's citizens with impunity in the hopes that the citizens will die before filing suit.[13]

For the above reasons, we affirm the district court's dismissal of Mr. Cisneros' claims.

### Exclusion of the Notice of Termination and Offense/Incident Report

---

action in disregard of the state law to which § 1988 refers us.  A state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose the litigation.  If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant.

*Robertson*, 436 U.S. 593.

[13]  The Medinas cite exclusively to *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489 (10th Cir. 1990), in the section of their brief devoted to this argument.  That case differs significantly, however, because the challenged action was directly related to the death of the plaintiff.  *Id.* at 1502.

Prior to trial, the defendants filed two motions in limine, pursuant to Federal Rules of Evidence 401, 402, and 403, seeking to prevent the Medinas from introducing Tort Claims Notices against the police department, testimony from several witnesses concerning prior incidences of alleged misconduct by the officers, and evidence related to Officer Pacheco's subsequent, unrelated termination from the police department. The district court granted the motions. "We review a district court's exclusion of evidence for an abuse of discretion. In reviewing a court's determination for abuse of discretion, we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995).

The Medinas argue the Tort Claims Notices and the witness testimony regarding other instances of alleged misconduct would have been relevant to the question of supervisory liability. The district court excluded the Tort Claims Notices and the witness testimony, finding such evidence to be insufficiently similar to the claims being tried. The court has reviewed the Tort Claims Notices and the Medinas' explanation to the district court of the witness testimony. We cannot find that the court's decision manifests a clear error of judgment or was based on a clearly erroneous finding of fact or an erroneous conclusion of law.

The incidents in question were in no way related to how officers should act when confronted with a family dispute over which household should have custody of children. Furthermore, the incidents do not relate to the proper type of training required for police officers who might find themselves in such a situation. We suspect the evidence was intended to damage the image of the defendants and we find the district court did not abuse its discretion in excluding it.

The Medinas suggest the evidence related to Officer Pacheco's subsequent, unrelated termination from the police department would have shown Officer Pacheco tended to lie, rather than accept responsibility for his actions. The district court granted the motion in limine, finding the termination not to be relevant to what happened three years earlier in a totally unrelated matter.[14]

The Medinas argue on appeal the district court's ruling was contrary to Rule 608(b) of the Federal Rules of Evidence and they should have been allowed to refer to these materials in their cross-examination of the officer. Rule 608(b) provides: "Specific instances of the conduct of a witness ... may, ... in the

_____

[14] In his discussion of this specific point, as in many places throughout his brief, counsel for the Medinas miscited to the record. Specifically, he directed this court to a point in the record where he asked the district court to reconsider its decision, rather than to the point where the district court made its initial ruling.

discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness ...." Fed. R. Evid. 608(b). One key aspect of this rule is that its application is explicitly within the discretion of the district court. The advisory committee notes to the rule warn courts "[e]ffective cross-examination demands that some allowance be made for going into matters of this kind, but the possibilities of abuse are substantial." *Id.* advisory committee notes. Consequently, the note says, courts need to employ safeguards, including disallowing the use of instances that are remote in time. *Id.* Furthermore, the note acknowledges the overriding protections of Rule 403 still apply. *Id.*

This court has reviewed the documents excluded by the district court and cannot find any significant evidence that would be probative of Officer Pacheco's truthfulness or untruthfulness. The only item that comes close to being probative is the officer's questionable answers on a claim form for unemployment payments. We agree with the district court, however, that evidence of this relatively minor incident was not sufficiently probative of Officer Pacheco's credibility concerning the claims at issue and thus should not have been allowed. The district court did not abuse its discretion in excluding this evidence.

The Medinas also contend the cumulative effect of the errors they appeal unduly prejudiced their case.  As we have found no errors, there can be no compound effect.


Accordingly, we **AFFIRM** the disposition below.


                                          **Entered by the Court:**

                                          **WADE BRORBY**
                                          United States Circuit Judge